UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INNOVATIVE SPORTS MANAGEMENT, INC., d/b/a Innovative Sports Management,<br><br>      **Plaintiff,**<br><br>v.<br><br>JORGE CORTEZ, Individually and as officer, director, shareholder, principal, manager and/or member of Delia's Restaurant LLC, d/b/a Tia Delia<br><br>and<br><br>DELIA'S RESTAURANT LLC, d/b/a LA TIA DELIA,<br>      **Defendants.** | Civ. No. 19-12048 (KM)<br><br>**OPINION & ORDER** |

**KEVIN MCNULTY, U.S.D.J.:**

  This matter comes before the Court on the plaintiff's unopposed motion (DE 10) for a default judgment. The plaintiff ("Innovative") owns certain rights covering a broadcast of a sporting event (the "Program").[1] The complaint alleges that the defendant restaurant ("La Tia Delia") and its principal, defendant Jorge Cortez, exhibited the match to its customers for commercial gain without obtaining a license or authority from Innovative.

**DISCUSSION**

  "[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments."

---

[1] The Program is a broadcast of the October 12, 2018 Clasico del Pacifico: Chile vs. Peru, a soccer match between two historic rivals.

1

*United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at *2.

## I. Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a). A review of the docket confirms the allegations of the motion that these prerequisites have been met. The clerk netered default on September 18, 2019. (Clerk's entry following DE 9)

Accordingly, I am satisfied that the prerequisites to filing a default judgment are met. *See Gold Kist*, 756 F.2d at 18–19.

2

## II. Three-Factor Analysis

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). Those factors, considered in light of the record of this case, weigh in favor of entry of a default judgment.

### A. Merits/Existence of Defense

The evaluation of the first factor is always complicated, of course, by the defendant's failure to answer the complaint or to oppose the motion. My independent review of the record, however, does not suggest that the claims are legally flawed. *See Doe*, 2013 WL 3772532, at *5. Accepting the allegations in the Complaint as true, *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990), I find that the Plaintiffs have successfully stated a claim for relief as against Defendant.

The complaint alleges that the Program broadcast originated via satellite uplink and was subsequently retransmitted to cable systems and satellite companies via satellite signal. For a fee, a commercial establishment could legitimately receive a license to receive the unscrambled signal and display the broadcast to customers. One way to circumvent that arrangement, however, is for a commercial establishment to purchase the Program as a pay-per-view event at residential rates but to nevertheless display it for commercial gain, in violation of the terms of service.

La Tia Delia is a restaurant in Paterson, New Jersey, whose owner or proprietor is defendant Jorge Cortez. It has a capacity of 51-100 persons. The complaint alleges that the restaurant purchased the Program at the residential rate but then displayed it to its customers for commercial benefit. The precise

3

technological means by which it did so are not stated, but many such means are available.

Innovative is the owner of a copyright for the Program. The certificate of registration, No. PA0002139144, was filed on January 14, 2019.

Count 1 alleges that the display of the Program at the restaurant constituted a violation of 47 U.S.C. § 605(a).[2]

Count 2 alleges that the display of the Program at the restaurant constituted a violation of 47 U.S.C. § 553.[3]

Count 3 alleges that the display of the Program at the restaurant infringed Innovative's copyright, in violation of 17 U.S.C. § 501.[4]

The facts as alleged, I find, make out a cause of action under the wording of the relevant statutes. While there is arguably some ambiguity in the

---

[2] (a) Practices prohibited

Except as authorized by chapter 119, title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio

4

communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

47 U.S.C. § 605(a).

3     (a) Unauthorized interception or receipt or assistance in intercepting or receiving service; "assist in intercepting or receiving" defined

(1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

(2) For the purpose of this section, the term "assist in intercepting or receiving" shall include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1).

47 U.S.C. § 553.

4     (a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506), any reference to copyright shall be deemed to include the rights conferred by section 106A(a). As used in this subsection, the term "anyone" includes any State, any instrumentality of a State, and any officer or employee of a State or instrumentality of a State acting in his or her official capacity. Any State, and any such instrumentality, officer, or employee, shall be subject to the provisions of this title in the same manner and to the same extent as any nongovernmental entity.

(b) The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it. The court may require such owner to serve written notice of the action with a copy of the complaint upon any person shown, by the records of the Copyright Office or otherwise, to have or claim an interest in the copyright, and shall require that such notice be served upon any person whose interest is likely to be affected by a decision in the case. The court may require the joinder, and shall permit the intervention, of any person having or claiming an interest in the copyright.

17 U.S.C. § 501(a) & (b).

allegations as to whether a cable signal, as opposed to just a satellite signal, was involved, I am not permitting dual recovery on these theories in any event. The copyright violation, moreover, is alleged with sufficient clarity.

### B. Prejudice, Culpability

The second and third factors also weigh in favor of default. Defendant was properly served, but failed to appear or defend. It is clear that the Plaintiff has been prejudiced by this dereliction because it has been "prevented from prosecuting [its] case, engaging in discovery, and seeking relief in the normal fashion." *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (find that a defendant's failure to answer prejudices the plaintiff); *see also Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012) ("[Plaintiffs] will suffer prejudice if the Court does not enter default judgment as Plaintiff[s] [have] no other means of seeking damages for the harm caused by Defendant."). Absent any evidence to the contrary, "the Defendant's failure to answer evinces the Defendant's culpability in [the] default. *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023 at *4. In this case, "there is nothing before the Court to show that the Defendant['s] failure to file an answer was not willfully negligent." *Id.* (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009) (finding that when there is no evidence that the defendant's failure to answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted).

Overall, then, the three factors support the entry of default judgment. I will grant the motion for default judgment.

### III. Damages

Innovative seeks damages under all three of the statutes involved. While I agree that statutory damages are available, I do not accept the full scope of plaintiff's argument.

Title 47, Sections 605 and 553 both provide for an award of statutory damages. Plaintiff Innovative concedes that a court should not award duplicative damages under both,[5] and elects to recover under 47 U.S.C § 605. Citing 47 U.S.C. § 605(e)(3)(C)(i)(II) & (ii), Innovative seeks the statutory maximum of $10,000, plus an enhancement of $20,000 for a willful violation.[6] For the copyright violation, Innovative seeks statutory damages of $15,000, plus an enhancement of $30,000 for willful infringement, citing 17 U.S.C. § 504.[7] Under both statutes, the actual amount awarded lies within the sound

---

[5] For that proposition, Innovative cites See Int'l Cablevision v. Sykes, 997 F.2d 998, 1008 (2d Cir. 1993), and my down decision in Joe Hand Promotions, Inc. v. Old Bailey Corp., Civ. No. 16-9207 , 2018 WL 1327108, at *2 (D.N.J. March 15, 2018).

[6]     (C)

   (i) Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;

      (I) [actual damages]; or

      (II) the party aggrieved may recover an award of statutory damages for each violation of subsection (a) involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

   (ii) In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a).

   (iii) In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250.

47 U.S.C. § 605(e)(3)(C).

[7]     (c) Statutory Damages.—

(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the

discretion of the court, taking all relevant circumstances into account. Thus, in analogous Section 605 cases, courts have considered such factors as the need for damages (for deterrent purposes) to exceed what the licensing fee would have been, a reasonable per-patron charge, or the likely profit reaped by the restaurant. *See Innovative Sports Management, Inc. v. Bernal*, Civ. No. 18-85, 2019 WL 885930, at *4–*5 (E.D.N.Y. 2019). *See also Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 143–44 (2d Cir. 2010) (listing relevant factors for copyright damages under 17 U.S.C. § 504).

I analyze the matter as follows. Irrespective of whether this is viewed as a Section 605 or a copyright violation, the harm is unitary: defendants have exceeded the terms of service by which they gained access to this Program for individual, not commercial, use.

For purposes of calculating damages, the plaintiff has supplemented the complaint with affidavits. An auditor employed by the plaintiff visited the restaurant and actually witnessed the violation. Although plaintiff's brief repeatedly refers to the capacity of the restaurant (51–100 people), one has to dig into the exhibits to discover that the auditor counted a total of 6 or 7 persons present on the night of the event.[8] (DE 10-4 at 4) There was no cover charge. (*Id.*) No one attended the door. (*Id.*) The television screen showed a logo indicating that the Program was being received on a pay-per-view basis. (*Id.*) To

---

court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.

17 U.S.C. § 504(c).

8   At the time, the score was 1–0 Peru at the half.

purchase a license from Innovative, even for the full 100-person capacity of the restaurant, would have cost $1000. (DE 10-4 at 1)

I accept that the damages must exceed the $1000 license fee in order to serve as a deterrent. The violation, however, is not particularly egregious. There is no indication that the restaurant promoted the event, or that it purposely used the Program to attract patrons. Indeed, it is not clear that the six or seven patrons came to watch, or were paying any attention to, the Program. Although the restaurant should not have been publicly displaying a residential pay-per-view program (for which they apparently paid), the plaintiff's rhetoric about "nefarious" acts and "pirating" obscures the fairly humdrum reality of six or seven patrons eating or drinking in a modest corner restaurant while a television played.

Innovative cites cases imposing "per-patron" charges of $30 to $50. *See Time Warner Cable of New York City v. Taco Rapido Restaurant*, 988 F. Supp. 107, 111 (E.D.N.Y. 1997) ($50); *Cablevision Systems New York City Corp. v. Allerton Lounge, Inc.*, Civ No. 95-10430, 1997 U.S. Dist. LEXIS 3553, *12 (S.D.N.Y. March 21, 1997) ($30 plus $10 cover charge per patron). That approach would yield damages of perhaps $350 in this case. Other cases cited by Innovative have imposed a flat fee based on the licensing fee that the restaurant should have paid. In *Bernal*, *supra*, Judge Ira Glasser found certain aggravating factors, including the restaurant's collection of a $20 cover charge and repeated violations. He therefore applied an enhancement multiplier of 4.5, rather than the usual trebling of the licensing fee for a willful violation. *Bernal*, 2019 WL 885930, at *6.

I find no particular aggravating factors here, and will impose a trebled enhancement. All in all, I will award damages of $4,000—the $1000 licensing fee plus a $3000 enhancement.

## IV. Attorney's Fees & Costs

Innovative claims costs and fees totaling $2512.67, including attorney's fees, the fee of the auditor, filing fees, and service fees. I find the request reasonable in light of prevailing rates in this area.

## ORDER

For the foregoing reasons,

IT IS this 24th day of February, 2020,

ORDERED that the motion (DE 10) for default judgment is granted, and the proposed default judgment will be entered against defendants, jointly and severally, and in favor of plaintiff Innovative, in a total amount of $6512.67.

KEVIN MCNULTY, U.S.D.J.